HUFFMAN *v.* FUDGE.

Opinion delivered May 29, 1916.

MORTGAGES—PURCHASE OF MORTGAGED LAND—RIGHTS OF PURCHASER.—The mere purchase of the equity in land subject to a mortgage, imposes no obligation upon either the purchaser or seller *inter se,* to pay the mortgage debt, and constitutes only a recognition that the debt is a lien on the land, and that neither party is to look to the other for indemnity. The grantee, having no obligation to pay the debt, is at liberty to deal with it as he pleases, and may treat the lien as superior to his own equities, and purchase the mortgage debt and enforce the lien against the land.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Brundidge & Neelly,* for appellant.

The appellant contends. (1) That the only contract or agreement it had with appellee was that it was to accept a deed for the equity in the lands in satisfaction of its

judgment. It never assumed the mortgage or agreed to pay it and did not assume it by purchasing the equity. (2) The alleged contract to convey twenty-one acres was within the statute of frauds. The court erred in granting relief under the cross-complaint. The only thing the bank agreed to do was to satisfy its judgment. 2 Am. & Eng. Ann. Cases, 286; 95 U. S. 289; 136 *Id.* 68; 148 *Id.* 481; 10 Okla. 527; 51 Mich. 636; 46 *Id.* 610; 8 Okla. 489; 23 Ark. 706; 32 Kans. 62; 2 Pom. Eq. Rem. 764; 113 Ark. 438; 103 *Id.* 191.

*Eugene Cypert* and *John E. Miller*, for appellees.

The bank agreed to accept in full satisfaction of its judgment the conveyance of a portion of the lands and to assume the mortgage debt. The deed was tendered and refused. Now appellants say the deed was indefinite in description and attempt to set up the statute of frauds. The description was sufficient. 61 N. J. Eq. 501; 8 Eng. & Am. Dec. in Equity, 639; Fry on Spec. Perf., § 328-9; 27 Beavers, 437; 66 Ark. 400; 85 *Id.* 442, and many others.

Huffman was trustee for the bank which assumed the mortgages. The court properly decreed specific performance.

McCulloch, C. J. This is an action instituted in the chancery court of White County by appellant, C. S. Huffman, against the appellees, J. T. Fudge and W. H. Thomas, to foreclose a mortgage executed by appellees to Frank D. Thomas, of Camp Point, Illinois, on certain real estate in White County to secure the payment of a note for the sum of $4,000, with interest, dated February 15, 1909, and due and payable on February 14, 1914, which said note and mortgage had been assigned by Frank D. Thomas to appellant.

Appellees answered, denying the allegation that Huffman was the owner of the mortgage by assignment from Frank D. Thomas or otherwise, but alleged that on the contrary the mortgage had been paid by the Columbus State Bank of Columbus, Kansas, pursuant to

an agreement with appellees to assume the obligation. Appellees filed a cross-complaint, as well as an answer, in which they alleged that they were indebted on contract to the Columbus State Bank in the sum of $3,000, for which judgment had been rendered against them in favor of said bank by the circuit court of White County, and that the bank had entered into an agreement with them to accept in full satisfaction of said judgment a conveyance of a portion of the lands conveyed by said mortgage and agreed further, in consideration of said conveyance, to assume and pay off said mortgage debt. They alleged further, in the cross-complaint, that they had offered to comply with said agreement but that the bank had refused to perform the same, and that the bank had procured an assignment of the mortgage to Huffman to hold for the benefit of the bank, and that the bank was really the owner of the mortgage.

The prayer of the cross-complaint was that the Columbus State Bank be made a party to the suit, that appellant Huffman be declared a trustee holding the note and deed of trust for the use of the bank, and that the note and deed of trust be canceled and treated as satisfied on account of said agreement of the bank to assume the payment thereof. The Columbus State Bank was made defendant to the cross-complaint and entered its appearance, and on final hearing of the cause the court entered a decree in accordance with the prayer of the cross-complaint, and an appeal has been duly prosecuted to this court.

The property in controversy comprises three hundred acres of land near the city of Searcy, and several small lots inside the city limits. Fifteen acres of the land constitutes the homestead of appellees. The alleged agreement set forth in the cross-complaint is evidenced by correspondence, beginning with a letter from appellee Thomas to appellant Huffman, dated April 27, 1914, proposing to "deed to the bank our equity in 285 acres for their judgment;" the letter proceeds with a

statement that "our equity is worth at least $2,000 more than your judgment, but we are not in position to hold so as to realize the real value of the land." The letter contains the further statement that "the mortgage is now due and something must be done or they will foreclose, and in case they do, the only way we would ever pay our obligation with the bank would be as we have suggested."

The bank replied to the letter, under date of May 12, 1914, as follows: "Replying to your letter of recent date wherein you propose to deed to the Columbus State Bank your equity in 285 acres of land near to the city of Searcy, Arkansas, in consideration of the release of the judgment the Columbus State Bank holds against you, I will say that we accept your proposition, and ask that you execute deed for same and forward to the Cherokee County State Bank, for examination, and if satisfactory we will forward release of our judgment against you."

Huffman was a stockholder and director in the Columbus State Bank, and had been its president, but was not president at the time this transaction occurred, having been succeeded by W. S. Norton. Appellees executed a deed conveying the land to the Columbus State Bank, reciting in the face of the deed the prior mortgage executed to Frank D. Thomas, and also containing a recital that the Columbus State Bank, as a part of the consideration, assumed the payment of the mortgage. This deed was forwarded to the Cherokee County Bank for delivery to the Columbus State Bank, but the latter refused to accept the deed because of the recital therein concerning the assumption of the mortgage debt by the grantees, and for other reasons unnecessary to mention in this connection.

On May 18, 1914, the Columbus State Bank forwarded to Frank D. Thomas the amount of the note, with accumulated interest, aggregating, principal and interest, the sum of $5,069.55, and directed that the note and mortgage be transferred to Huffman, and Thomas accepted the money and executed a written assignment

transferring the mortgage and note to Huffman. The letter from the bank to Thomas showed that the transaction was to be for the benefit of the bank, and that the assignment was to be to Huffman merely for the accommodation of the bank for the reason that under the laws of Kansas the bank was restricted in its holdings of real estate. The letter further contains the statement that "we have accepted the proposition made by Messrs. Fudge & Thomas, whereby we become the owners of the fee in this real estate." Mr. Norton, the president of the Columbus State Bank, subsequently visited Searcy and had some conference with appellees, but it does not appear that there was any additional agreement made different than that expressed in the correspondence.

It will be noted from the correspondence set forth above that the proposition made by appellees was to sell to Huffman their "equity in 285 acres," and the acceptance by the bank was couched in the same language. The contract thus established by the correspondence contained no obligation on the part of appellant or the bank to assume the payment of the mortgage debt, therefore the bank was justified in refusing to accept the offered conveyance reciting an assumption on the part of the bank of the mortgage debt. The conveyance was not in accordance with the terms of the contract, and appellees did not comply with their contract in tendering this deed, and, on the contrary, broke their contract by refusing to execute a deed in any other form. For that reason, if for no other, they are not in an attitude to seek specific performance of the contract. But in addition to that, under the terms of the contract neither Huffman nor the Columbus State Bank agreed to assume the payment of the mortgage debt and can not be compelled to do so. Some of the authorities seem to make a distinction between the purchase of real estate "subject to" a prior mortgage and the purchase of the equity therein, a few of the courts holding that a purchase subject to a prior mortgage implies the obligation to pay it, while

the mere purchase of an equity does not amount to an obligation to pay. Other courts hold that there is no distinction between the two, and that the purchase subject to a mortgage is equivalent merely to a purchase of the equity. Such is the express holding of the Massachusetts court in the case of *Fiske* v. *Tolman,* 124 Mass. 254, where it is said: "It is settled in this Commonwealth, that, where land is conveyed in terms subject to a mortgage, the grantee does not undertake, or become bound by the mere acceptance of the deed, to pay the mortgage debt. In the absence of other evidence, the case shows that he merely purchased the equity of redemption." That case was cited with approval by this court in *Patton* v. *Adkins,* 42 Ark. 197, where it was held that "the acceptance of a deed subject to a specified mortgage does not imply a promise by the grantee to pay the mortgage debt." That doctrine has been adhered to by this court in later cases. *J. H. Magill Lumber Co.* v. *Lane-White Lumber Co.,* 90 Ark. 426; *Mott* v. *American Trust Co.,* 124 Ark. 70.

While the authorities are not altogether in harmony on this subject, our position on the question seems to be in accord with the weight of authority. "If the purchaser buys a mere equity of redemption," says Mr. Jones in his work on Mortgages, Vol. II, section 738, "he is not personally liable for the mortgage debt, or liable either legally or equitably to indemnify his grantor against the mortgage. He may give up the property at any time in satisfaction of the lien." Now, according to this doctrine the mere purchase of the equity imposes no obligation upon either of the parties *inter se* to pay the mortgage debt, but constitutes merely a recognition that the debt is a lien on the land and that neither party is to look to the other for indemnity. It necessarily follows that under those circumstances, the grantee, having no obligation to pay the debt, is at liberty to deal with it as he pleases, and has a legal right to treat the lien as superior to his own equities and to pur-

chase the mortgage debt and enforce the lien against the land.

According to the undisputed evidence in this case, the contract of Columbus State Bank was merely to purchase the equity in a certain portion of the mortgaged lands in consideration of a release of its judgment against the appellees, and if that contract had been consummated it would not have constituted an extinguishment of the mortgage, nor would it have prevented appellant from purchasing the mortgage and enforcing the lien thereof against all of the lands described in the mortgage.

The chancellor was therefore in error in sustaining the prayer of the cross-complaint, and the decree is reversed and the cause remanded with directions to dismiss the cross-complaint and enter a decree foreclosing the mortgage in accordance with the prayer of appellant's complaint.